**WRIGHT et ux. v. CARROLLTON GRAVEL & SAND CO.**

Court of Appeals of Kentucky.

Oct. 5, 1951.

William G. Reed, Carrollton, for appellants.

J. L. Donaldson, Carrollton, for appellee.

STEWART, Justice.

Appellants, Grover Wright and his wife, Hazel Wright, brought this action against appellee, Carrollton Gravel and Sand Company, a corporation, to recover $1500 damages alleged to have been done to land owned by them and in the possession of appellee under a lease executed by appellants to appellee. The lower court sustained a demurrer to the petition and an amended petition and appellants having declined to plead further, judgment was entered dismissing their petition. They appeal.

On July 10, 1948, the Wrights and the Company entered into a contract whereby the Wrights leased unto the Company for 25 years, with the option to renew for a

similar period of time, 150 acres of land off of the southeastern part of their farm to be used "for the sole purpose of mining, digging, selling and marketing sand and gravel mined and removed" therefrom. Under the lease contract it is stipulated that the leased premises from which sand and gravel are to be excavated shall first be "marked off by the mutual consent, aid and assistance of all of the parties hereto" in parcels of not less than one acre and that the sum of $500 shall be paid to the Wrights for each acre so selected for sand and gravel operations before any stripping shall be actually begun thereon. The petition averred that two acres had already been marked off in conformity with the terms of the lease from which sand and gravel are now being mined and for which the Wrights have been paid $1000 by the Company.

Appellants' cause of action is based upon trespass, and they seek to recover damages as a result of the admitted use by appellee in depositing top soil and overburden and in stock-piling gravel on three additional acres of the land embraced in the lease contract. The allegations in the pleadings and the argument in the brief filed by appellants ask for damages upon the theory that there is no provision in the lease agreement which permits top soil or overburden to be dumped upon or gravel to be stockpiled upon land from which it is insisted appellee never intends to remove sand or gravel; or, to state their contention differently, appellants maintain that appellee has appropriated for its sand and gravel operations three acres of their land for which they have received no payment.

It readily appears that the sole question to be determined in this action is: Did the lease in question of the land herein to be utilized, and we quote from the contract, "for the sole purpose of mining, digging, selling and marketing sand and gravel" bestow upon appellee the incidental right to deposit top soil and overburden and to stock-pile gravel upon additional land from which sand and gravel is not being actually removed and for which no compensation has been made to appellants?

■ Generally, the owner of minerals in place has the implied right to a reasonable use of the surface of the land owned by another for dumping materials or refuse from the mine. The rule is succintly stated in 36 Am.Jur., Mines and Minerals, Sec. 179, as follows: "Although the owner of minerals in place may not, in the absence of some agreement to the contrary, use the surface as a dumping ground for materials or waste from mines on adjoining property, he may, as incidental to mining the coal or other minerals underlying the land itself, use an appropriate part of the surface thereof as a dump. For such purpose he is entitled to use only so much of the surface as is strictly and reasonably necessary."

We have construed mineral deeds in conformity with the foregoing statement of law, and we have extended the application of the same legal principle to explorations for oil and gas. United Carbon Co. v. Webb, 137 S.W.2d 733, 282 Ky. 79. Where the land is subdivided horizontally, that is, where one owns or controls the surface and another the minerals of the same tract of land, an incidental right arises in behalf of the owner of the minerals to make such use of the surface as is reasonably required in exploring, mining, removing and marketing the minerals. See 58 C.J.S., Mines and Minerals, § 176(b).

In the instant case, the open pit method of excavating sand and gravel is followed, and appellee has control of and can use, without restriction, the surface of each acre acquired by it for the purpose of digging and marketing sand and gravel; therefore, no necessity exists to utilize the surface of other land of appellants in order to reach and remove the sand and gravel actually embedded in the two-acre tract paid for by appellee and now being mined by it. In short, the rights in the minerals and the overlying surface of the two acres are so merged that the general rule set forth in the Webb case does not apply here. Admittedly it might be more expeditious and less costly to dispose of top soil and overburden on nearby adjacent land of appellants rather than transport such refuse to

a dumping place on the two acres at present utilized by appellee, but we know of no instance where the surface of another's land may be used in mining operations because of mere convenience and economy.

Appellee acquired only such substantive interests in the land as are specified in the lease itself. In other words, the lease is the source and the limitation of appellee's rights and powers to use appellants' land. When we examine this instrument we note that the 150-acre tract is to be exploited for sand and gravel, acre by acre, and that, before any acre of the land may be entered upon for the purpose described in the lease, it must be staked off by agreement of the parties and payment must be made therefor by appellee. In effect, appellee, under its contract with appellants, obtained what amounts to an option to extract and sell sand and gravel from each additional acre to which appellee might choose to extend its operations, conditioned upon its first complying with the terms of the lease as to the selection of and the payment for the particular acre to be mined or exploited.

There are no domestic cases on the issue involved in this litigation; nor has our research uncovered any foreign decision exactly in point. United Carbon Co. v. Webb, supra, so strongly relied upon by appellee, is not controlling in the case at bar, because the deed granting the minerals also provided that the owner of the minerals should have the right to dump, store and leave on the surface refuse matter and other products which might be extracted in the mining operation, while the lease in suit is silent as to such right. Moreover, the law set forth in that opinion does not fit the facts of the instant case.

It is our belief that the right of appellee to use the additional three acres in controversy arises from and ceases with the necessity of the case and that such necessity does not exist here. Furthermore, it is our opinion, and we so hold, that since the lease does not give unto appellee the express or implied right to dump top soil and overburden and to stock-pile gravel on any of the land of appellants not acquired in accordance with the terms of the lease, appellee has made itself liable for

its acts in appropriating the acreage of land in suit without compensating appellants therefor.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.